UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROOSEVELT T.,

                 Plaintiff,

   v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

                 Defendant.

CASE NO. C18-1450-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1967.[1] He completed tenth grade, and has worked as a

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 1

janitor, pallet laborer, and forklift driver. (AR 227, 256.)

Plaintiff protectively applied for SSI in March 2015, alleging disability as of October 14, 2014.[2] (AR 202-10.) Those applications were denied and Plaintiff timely requested a hearing. (AR 123-30, 134-44.)

In April and July 2017, ALJ Stephanie Martz held hearings, taking testimony from Plaintiff and a vocational expert (VE). (AR 39-80.) On December 22, 2017, the ALJ issued a decision finding Plaintiff not disabled. (AR 13-30.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on July 30, 2018 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found that although Plaintiff engaged in substantial gainful activity since the beginning of the adjudicated period, there was nonetheless a period of at least 12 months where Plaintiff did not, and the decision therefore addresses that period. (AR 15-16.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe Plaintiff's seizure disorder. (AR 16-19.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found

---

[2] The ALJ found that the adjudicated period begins on the application date, March 27, 2015. (AR 13.)

that Plaintiff's impairment did not meet or equal the criteria of a listed impairment. (AR 19.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff capable of performing work at all exertional levels, but he must avoid exposure to hazards, heights, open bodies of water, and moving machinery. (AR 19.) With that assessment, the ALJ found Plaintiff able to perform past relevant work as a cleaner and stores laborer. (AR 28-29.)

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. The ALJ entered alternative step-five findings, indicating that Plaintiff could also adjust to other representative jobs, such as assembler, cashier II, and packing line worker. (AR 29-30.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in (1) finding some of his medically determinable impairments to be not severe at step two, (2) finding that his seizure disorder does not meet a listing at step three, (3) discounting his subjective testimony, (4) assessing medical opinion

evidence, (5) omitting certain limitations from the RFC assessment, (6) finding that he could perform his past work, and (7) relying on the VE's testimony at step five. Plaintiff also argues that evidence submitted to the Appeals Council was erroneously rejected. Plaintiff argues that the errors in the ALJ's decision should be remedied by a remand for a finding of disability. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

Step two

Plaintiff argues that the ALJ erred in discounting various conditions as severe at step two, each of which the Court will address in turn.

<u>Legal standards</u>

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id*. (citing *Bowen*, 482 U.S. at 153-54). An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity. *Id*. A diagnosis alone is not sufficient to establish a severe impairment. Instead, a claimant must show his medically determinable impairments are severe. 20 C.F.R. §§ 404.1521, 416.921.

/ / /

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 4

<u>Back pain & shoulder impairment</u>

Plaintiff alleges that the ALJ erred in finding that his back pain and shoulder impairment were not severe because the ALJ relied on the opinion of a consultative examiner, A. Peter Weir, M.D., who did not have access to all of the objective evidence. Dkt. 14 at 3. He also argues that because the evidence shows that he never recovered full range of motion after his shoulder surgery, that evidence shows that he had some workplace restrictions. Dkt. 14 at 3-4.

In finding that Plaintiff's back pain and shoulder impairment were not severe, the ALJ cited many unremarkable physical examinations as well as the minimal complaints and treatment for either issue. (AR 16-17.) The ALJ also noted that Plaintiff was able to perform medium-exertion work as a janitor from October 2016 to June 2017, which further suggests that his back and shoulder conditions were not severe. (AR 17.)

Plaintiff's brief does not address the evidence cited by the ALJ, or specifically identify error in the ALJ's reasoning. Plaintiff argues that the ALJ erred in crediting Dr. Weir's opinion because Dr. Weir did not have access to x-ray evidence at the time of his examination, but the x-rays cannot establish that Plaintiff's condition is severe. X-rays may support a diagnosis, but a diagnosis is not sufficient to establish severity. *See* 20 C.F.R. § 416.922. The ALJ cited substantial evidence showing that Plaintiff's medically determinable back and shoulder conditions did not cause significant workplace limitations, and Plaintiff has provided no meaningful challenge to the ALJ's stated reasoning. Accordingly, the Court finds that Plaintiff has failed to meet his burden to show harmful legal error at step two.

<u>Mental complaints</u>

The ALJ noted that Plaintiff alleged that he was limited by his depression, anxiety, and post-traumatic stress disorder, but she found that the record showed only sporadic complaints of

mental symptoms and no mental health treatment. (AR 17.) The ALJ also cited evidence of benign mental status findings and symptom magnification. (AR 17-18.) Lastly, the ALJ reviewed the "paragraph B" criteria to determine that Plaintiff's mental conditions were not severe. (AR 18-19.) On this record, the ALJ concluded that Plaintiff's mental conditions were not severe.

Plaintiff argues that the ALJ overlooked "medically determinable symptoms" and found them non-severe. Dkt. 14 at 5. This argument conflates the two parts of the ALJ's step-two inquiry. The ALJ found that Plaintiff's mental conditions were medically determinable to some extent, but found that they were not severe in light of his lack of consistent reporting of symptoms, his lack of treatment, the evidence of benign findings on mental status examination, and evidence of symptom magnification. (AR 17-18.) Plaintiff's pointing to evidence showing that his depression was "medically determinable" does not therefore identify an error in the ALJ's decision.

Dizziness

The ALJ found that Plaintiff's headaches and dizziness "have occurred only sporadically, were acute/transient, or do not cause more than minimal workplace limitations," and were thus non-severe. (AR 19.) Plaintiff cites three reports of dizziness, in December 2015, May 2016, and June 2017. (Dkt. 14 at 4 (citing AR 699, 712, 740).) Each time Plaintiff reported dizziness, his provider either connected that symptom with his seizure disorder (which the ALJ found to be severe) or was unsure what condition was causing that symptom and instructed Plaintiff to seek further cardiac evaluation, which Plaintiff did not apparently do. (AR 699, 714, 743.) This evidence reasonably supports the ALJ's finding that Plaintiff's dizziness was either sporadic or acute/transient, and thus Plaintiff has failed to show that the ALJ erred in finding Plaintiff's dizziness to be not severe at step two.

### Step three

The ALJ found that Plaintiff did not meet Listing 11.02 because "[a]lthough [Plaintiff] has had ongoing seizure episodes since March 2015, he does not meet Listing 11.02 because he has been repeatedly noncompliant with prescribed treatment[.]" (AR 19.) Plaintiff argues that this finding is erroneous. (*See* AR 19.)

Listing 11.02A pertains to epilepsy causing generalized tonic-clonic seizures occurring at least once a month for three consecutive months despite adherence to prescribed treatment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02A.[3] The listing's introductory material indicates that seizures will not be counted toward meeting the requirements if they occur during a time that a claimant is not adhering to treatment, unless the claimant has a good reason for failing to adhere. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00H(4)(d). This subsection indicates that examples of a good reason for a failure to comply with treatment would be avoiding "very risky" treatment, or an inability to afford medication if no free community resources were available. *Id*.

### Legal standards

At step three, the ALJ considers whether one or more of a claimant's impairments meet or medically equal an impairment listed in Appendix 1 to Subpart P of the regulations. "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original; citations omitted).

---

[3] This is the only subsection of Listing 11.02 that Plaintiff references in his brief, and thus the Court need not address other subsections. *See* Dkt. 14 at 8 ("Had the ALJ properly considered [Plaintiff's] overall adherence to treatment, she would have found that his generalized tonic-clonic seizures occurring at least once a month for at least 3 consecutive months despite overall adherence to prescribed treatment met a listing at Step-Three.").

Plaintiff bears the burden of proof at step three. *Bowen*, 482 U.S. at 146 n.5. A mere diagnosis does not suffice to establish disability. *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). "'[An impairment] must also have the *findings* shown in the Listing of that impairment.'" *Id*. at 1549-50 (quoting § 404.1525(d); emphasis added in *Key*). To meet a listing, an impairment "must meet *all* of the specified medical criteria." *Sullivan*, 493 U.S. at 530 (emphasis in original).

Listing 11.02

As an initial matter, the Court notes that Plaintiff has not cited evidence that he experienced seizures at the frequency required by Listing 11.02A. Plaintiff's briefing does not cite specific evidence showing that Plaintiff experienced seizures at least once a month for three consecutive months during periods of medication compliance. Dkt. 14 at 6-8; Dkt. 16 at 4-5.

Moreover, although Plaintiff contends that he had many good reasons for not always adhering to treatment recommendations (Dkt. 14 at 6-7), the record does not bear this out. Specifically, Plaintiff claims he had trouble establishing care with doctors due to missed appointments, that he hated getting blood drawn, that he could not afford treatment, and that had trouble following through with treatment due to moving around. *Id*. (citing AR 595, 586, 722, 806-08, 818). Plaintiff did not cite any of these reasons to the ALJ as an explanation for why he failed to comply with his treatment recommendations, instead testifying that he always took his medication. (*See* AR 59, 66.) Plaintiff's missed appointments and lack of follow through do not constitute good cause for failing to comply with prescribed treatment, because Plaintiff does not cite any extreme circumstances that prevented him from obtaining care. *See* 20 C.F.R. § 416.930(c) (examples of good reasons for failing to comply with prescribed treatment). Likewise, an aversion to blood draws is not a good reason to fail to comply with treatment, particularly because there is no evidence that Plaintiff avoided treatment for this reason; his "nervousness"

around blood draws is mentioned in one treatment note as an explanation for his high blood pressure at the time of a blood draw. (AR 807-08.) An inability to afford treatment could constitute good cause, but Plaintiff does not cite evidence demonstrating this. *See* Dkt. 14 at 6-7.[4]

Because Plaintiff has not shown that he meets either the seizure-frequency requirement or the treatment compliance requirement, he has not met his burden to show error in the ALJ's step-three findings.

## Subjective symptom testimony

The ALJ found Plaintiff's testimony to be inconsistent with the record, citing: (1) benign objective evidence inconsistent with Plaintiff's allegations; (2) Plaintiff's repeated noncompliance with treatment recommendations and improvement when compliant; (3) Plaintiff's ability to work after he alleges his disability onset, and evidence that this job ended for reasons unrelated to his impairments; (4) multiple discrepancies in Plaintiff's reports; and (5) evidence of Plaintiff's symptom magnification and/or poor effort during testing. (AR 20-24.) An ALJ's reasons to discount a claimant's testimony must be clear and convincing. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Plaintiff provides a cursory challenge to the ALJ's findings regarding his testimony. Dkt. 14 at 17-18. He questions whether his seizures were "benign," whether he was noncompliant, and whether he stabilized with treatment. Dkt. 14 at 17. He does not cite any evidence supporting this dispute, or cite any evidence showing that the ALJ's interpretation was unreasonable and therefore erroneous. *Id*. Plaintiff also questions whether his ability to work during the adjudicated period actually contradicts his allegations, because the ALJ did not inquire as to his job duties. *Id*. Even

---

[4] This portion of Plaintiff's brief cites AR 806-08 for the proposition that he told a provider that he could not afford treatment, but the Court's review of these pages does not reveal any such statement.

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 9

in the absence of specific testimony as to his job duties, Plaintiff's ability to work during the adjudicated period reasonably contradicts his allegation that he could not work. Because Plaintiff has not shown that any of the ALJ's reasons for discounting his testimony were erroneous, and has left some of the reasons entirely unchallenged, Plaintiff has failed to show harmful error in the ALJ's assessment of his subjective testimony.

Medical opinion evidence

Plaintiff contends that the ALJ erred in assessing various parts of the medical record. Dkt. 14 at 8-13. The Court will address each dispute in turn.

<u>Legal standards</u>

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). Rather than merely stating her conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

///

Brandon Liu, M.D.

Plaintiff argues that the ALJ failed to provide any reason to "ignor[e] Dr. L[iu]'s opinion regarding low-back arthrosis[.]" Dkt. 14 at 8. But the ALJ did not ignore this evidence: she specifically cited Dr. Liu's imaging results in her discussion of Plaintiff's back pain. (AR 16 (citing AR 501).) She acknowledged that Dr. Liu's x-ray revealed mild to moderate osteoarthritic changes in the lumbar spine, but explained that she concluded that this condition did not cause significant workplace limitation because Plaintiff raised minimal complaints of back problems and had minimal treatment for those problems. (AR 16.) Plaintiff has not shown that the ALJ ignored Dr. Liu's x-ray results.

Range-of-motion testing

Plaintiff cites abnormal range-of-motion testing in an attempt to argue that his shoulder never fully returned to full range of motion post-surgery. Dkt. 14 at 8-9 (citing AR 471 (June 2013 note), 501-02 (objective imaging evidence), 503-07 (October 2015 consultative examination), 618-19 (June 2017 opinion regarding limitations caused by seizure disorder)). Plaintiff does not address the reasons provided by the ALJ that support her interpretation of the evidence. Dkt. 14 at 8-9. The ALJ cited normal range-of-motion and strength test results, as well as Plaintiff's lack of complaints or treatment for shoulder issues since March 2015, the beginning of the adjudicated period. (AR 17.) The ALJ also explained why she discounted the consultative examiner's opinion regarding limitations caused by Plaintiff's shoulder condition. (AR 24.) Because Plaintiff has failed to address the ALJ's stated reasoning, Plaintiff has not and cannot show error in the ALJ's decision with respect to opinions regarding Plaintiff's shoulder function.

Mental impairments

Plaintiff notes that the ALJ discounted six opinions regarding Plaintiff's mental limitations,

finding them inconsistent with the lack of mental health treatment, the normal mental findings noted in treatment notes (for physical conditions), and his ability to work and perform as a jazz musician. Dkt. 14 at 9 (citing AR at 27-28). The ALJ further explained that four of the discounted opinions predate the adjudicated period and moreover predate the prior administratively final determination of non-disability. (AR 28.)

Plaintiff contends that there is no evidence that he performed as a jazz musician during the time of these opinions, and emphasizes that he is a poor historian. Dkt. 14 at 9. Plaintiff's concession that he is a poor historian is curious, because this supports the ALJ's conclusion that discrepancies in Plaintiff's self-reporting undermines the reliability of his statements. (*See* AR 23-24.) In any event, there is evidence that Plaintiff continued to perform jazz music during the adjudicated period, and the ALJ cited this evidence. (AR 18 (citing AR 488, 558).)

Plaintiff also notes that the ALJ did not inquire regarding his job duties as a janitor. Dkt. 14 at 10. Again, Plaintiff's ability to work for more than six months during the adjudicated period, regardless of his specific job duties, contradicts opinions that he has disabling mental limitations. Plaintiff's ability to work is a specific, legitimate reason to discount the opinions at issue.

Plaintiff then devotes pages of his brief to a summary of findings contained in the discounted opinions. Dkt. 14 at 10-13. This portion of the brief is not linked to the ALJ's decision and does not establish that the ALJ erred. Accordingly, because Plaintiff has not shown that the ALJ erred in discounting the disputed opinions, the ALJ's assessment is affirmed.

## RFC

Plaintiff argues that the ALJ erroneously omitted various physical and mental limitations from the RFC assessment. Dkt. 14 at 13-14. The only evidence Plaintiff cites to support that argument is evidence that the ALJ discounted, regarding Plaintiff's mental impairments, seizures,

back pain, and shoulder limitations. *Id*. The ALJ explained why she found that evidence to be unreliable, and Plaintiff has not shown that the ALJ erred in so finding. Accordingly, Plaintiff has failed to show that the ALJ erred in assessing his RFC. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005) (holding that an RFC assessment (or VE hypothetical) need not account for limitations or impairments that the ALJ properly rejected).

### Step four

Plaintiff alleges an error in the ALJ's step-four findings that he could perform his past work. Dkt. 14 at 14-15. But the ALJ entered alternative findings at step-five, which cure any step-four error. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1037 (9th Cir. 2008). Thus, the Court need not address Plaintiff's step-four argument.

### Step five

Plaintiff argues that the ALJ erred in relying on VE testimony at step five without ensuring that the testimony did not conflict with the Dictionary of Occupational Titles (DOT). As Plaintiff acknowledges, the ALJ asked the VE to identify any DOT conflicts. (AR 75-76.) The VE did not identify any, and neither has Plaintiff. Under these circumstances, Plaintiff has not shown that the ALJ erred in relying on the VE's testimony.

### Appeals Council evidence

Plaintiff submitted a letter from his counselor to the Appeals Council. (AR 9.) The letter indicates that Plaintiff started counseling on October 20, 2017 (after the ALJ hearing but before the ALJ's decision was entered), and had been seen three times before the end of 2017. (*Id*.) The counselor stated that Plaintiff had been diagnosed with depression and anxiety. (*Id*.)

The Appeals Council acknowledged receipt of this letter, but found that it did not provide a basis for changing the ALJ's decision because it post-dated the ALJ's decision. (AR 2.) The

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 13

letter does post-date the ALJ's decision, but it references counseling appointments that pre-dated the decision. (AR 9.) But in any event, the letter does not describe any functional limitations, let alone functional limitations that are inconsistent with the ALJ's decision, and thus it does not undermine the ALJ's conclusions. Accordingly, the Court finds that this Appeals Council evidence does not provide a basis for reversing the ALJ's decision. *See Brewes v. Comm'r of Social Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.").

## CONCLUSION

For the reasons set forth above, this matter is AFFIRMED.

DATED this 7th day of June, 2019.

Mary Alice Theiler
United States Magistrate Judge